STEFKA et al. v. LAWRENCE et al.*
(No. 6989.)

(Court of Civil Appeals of Texas. Austin. Nov. 10, 1926. Rehearing Denied Dec. 8, 1926.)

1. Trial ☞352(4)—In granddaughter's suit for cancellation, for duress of deed covering share of decedent's property, special issue as to whether consideration was amount allowed by decedent held properly excluded under pleadings.

In suit by granddaughter of deceased, against his widow and children, for cancellation of deed to defendants conveying her interest in deceased's property, on ground of duress, special issue requested by defendants as to whether consideration of $500 given for deed was amount set aside to plaintiff by deceased held properly refused as without foundation in defendant's pleadings.

2. Trial ☞350(1)—Each party has right to have submitted to jury each group of facts which would authorize or defeat recovery.

Each party has right to have submitted to jury each independent group of facts supported by pleadings and evidence, which, if found, would authorize or defeat recovery.

3. Descent and distribution ☞82—Threat of other heirs to imprison granddaughter for theft held duress, where used to procure conveyance for $500 of her share of decedent's property worth $3,281.25.

Threat to imprison granddaughter of decedent for theft of $1,410 from deceased's widow and children held duress, where used to procure conveyance of granddaughter's share of decedent's property worth $3,281.25 for consideration of $500, in addition to note for $1,410.

4. Descent and distribution ☞83—In action for granddaughter's share of decedent's personalty passing into possession of children, finding that property passed by death held supported by evidence, though children claimed earlier transfer.

In action for granddaughter's share, as heir, of personal property shown to have been owned by decedent and to have come into possession of children at death, evidence held sufficient to warrant jury in finding property passed by death, though undisputed testimony of children was that decedent gave it to them before.

5. Evidence ☞594—In granddaughter's suit for share of decedent's property in possession of children, jury could disregard testimony as to transfer before death, though uncontradicted.

In action by granddaughter, as heir, for share of decedent's property which came into possession of decedent's children at death, court and jury were not bound to accept testimony of children that decedent gave them all his property before death, though such testimony was uncontradicted.

6. Descent and distribution ☞83—Where granddaughter claiming share in estate showed decedent's property passed to children on death, burden was on children to prove earlier transfer.

Where granddaughter, suing as heir for share of decedent's property, showed property came into possession of children at death, burden was upon children to show decedent parted with title before death.

7. Descent and distribution ☞83—In granddaughter's suit for share of personalty of decedent, evidence of claims totaling $22,000 held to sustain verdict that property was worth $10,849.44.

In granddaughter's suit as heir to recover her share of decedent's personal property from children of decedent, jury's verdict that property was worth $10,849.44 held sustained by evidence, where three claims owned by decedent amounted to over $22,000.

Appeal from District Court, Williamson County; Cooper Sansom, Judge.

Suit by Sadie Julia Lawrence and husband against E. A. Stefka and others, in which defendants filed a cross-action. Judgment for plaintiffs, and defendants appeal. Affirmed.

Hart, Patterson & Hart, of Austin, and Wilcox & Graves, of Georgetown, for appellants.

O. E. Roberts, of Taylor, and J. Harris Gardner and White, Wilcox, Graves & Taylor, all of Austin, for appellees.

McCLENDON, C. J. Suit by Sadie Julia Lawrence, appellee, whom her husband joined pro forma, against E. A. Stefka and others. Appellants and appellee were the sole heirs at law of Frank Stefka, who died in 1913. Appellants were the surviving wife and children of Frank Stefka; and appellee was the only child of Julia Pankoney, a daughter of Frank Stefka, who died March 24, 1902, just a month and ten days after the birth of appellee. On February 19, 1923, four days after reaching her majority, appellee conveyed to six of the appellants her inherited one-sixteenth interest in a 300-acre tract of land, which was the community property of her grandfather and grandmother, and was the only real estate

owned by her grandfather at the time of his death. The recited consideration in the deed was $500 cash, "and other valuable consideration." This suit was brought to set aside the deed, to recover appellee's interest in personal property of her grandfather alleged to have been converted by appellants, to cancel a note of $1,410 she had executed to appellants, and for rents, accounting, and partition. Trial to jury on special issues, and judgment for appellee for costs and (1) canceling the deed on the ground of duress, decreeing to appellee one-sixteenth interest in the land, and ordering a partition; (2) canceling the $1,410 note; (3) awarding appellee $2,298.71 as her share of the personal property converted, against which was offset $1,649.60, the amount of the $1,410 note and interest.

Appellants' brief contains 32 assignments of error, but only 30 of these have any propositions to support them. Of these 30 a number are not briefed as the rules require and a large majority are without semblance of merit. To write on every proposition the brief contains would both be a waste of useful energy and lengthen this opinion beyond due bounds and to no useful purpose. We have carefully considered all the propositions presented, and have concluded that the trial court's judgment should be affirmed. In our opinion the only questions presented which are of sufficient merit to warrant discussion are the following:

(1) Whether the court committed reversible error in not submitting to the jury a special issue whether appellee accepted the "$500 consideration in said deed because the same had been theretofore set aside to her by her grandfather Frank Stefka."

(2) Whether the evidence supports the finding of duress.

(3) Whether the evidence is conclusive that before his death Frank Stefka gave to his adult children all his personal property.

(4) Whether the pleadings and evidence are sufficient to sustain the judgment on the personal property award.

The following statement of the case will suffice to a clear understanding of these issues:

Appellee's pleadings need not be further noted than that she alleged that appellants claimed that she owed them $1,410 for money she had stolen from them, for which she executed the note, that she signed the deed under duress, in that appellants threatened her with criminal prosecution for having stolen their money, and that she did not receive the $500 mentioned in the deed.

Appellants, besides a general denial, and special denial of duress, pleaded that the consideration of the deed was the $500 mentioned therein, which they paid to appellee "at such time there being other valuable consideration which had been heretofore obtained from the defendants by" appellee. They denied that Frank Stefka owned any personal property at the time of his death, alleging that he had given all his personal property to his adult children. They filed a cross-action for $6,285, in case of recovery against them, which they alleged appellee owed them for support.

The special issues and the jury's answers thereto follow:

"(1) Did the plaintiff, Sadie Julia Lawrence (then Sadie Julia Pankoney), sign the deed to J. T. Stefka, E. A. Stefka, Fanny A. Stefka, Mary Stefka, and W. L. Stefka, at the office of Albert S. Evans, in Georgetown, Tex., dated February 19, 1923, wholly through fear of being prosecuted and sent to the penitentiary for unlawfully taking money from the defendants? Answer: Yes.

"(2) If you answer question No. 1 'Yes,' then answer this question: 'Was such fear, if any, caused by threats of prosecution, if any, made by the defendants, or either of them?' Answer: Yes.

"(3) Did the plaintiff, Sadie Julia Lawrence, receive the $500 mentioned as a consideration in said deed dated February 19, 1923, executed by her to said J. T. Stefka, E. A. Stefka, Fanny A. Stefka, Mary Stefka, and W. L. Stefka? Answer: Yes.

"(4) State in dollars and cents how much money the plaintiff, Sadie Julia Lawrence, took from the possession of the defendants, or either of them, without their permission or consent? Answer: $1,410.

"(5) Did Frank Stefka, grandfather of plaintiff, before his death, give to his adult children all his personal property in consideration of his said children promisng to care for and support him and his wife, Mrs. Frances Stefka, during their lives, and to care for and support the two minor children until they reached the age of 21 years? Answer: No.

"(6) What was the value of the undivided one-half interest of Frank Stefka, the grandfather of plaintiff, if any, in the money, notes, cattle, horses, mules, and farming implements, if any, which went into the hands of defendants at the time of the death of the said Frank Stefka. Answer: $10,849.

"(7) What is the reasonable market value of the land owned by Frank Stefka and Mrs. Frances Stefka, grandfather and grandmother, respectively, of the plaintiff, Sadie Julia Lawrence? Answer: $52,500.

"(8) What amount of rents and revenues, over and above the cost of production, have been derived from the 300 acres of land belonging to Frank Stefka and Mrs. Frances Stefka, involved in this suit, since the death of the said Frank Stefka, including the years 1914, 1915, 1916, 1917, 1918, 1919, 1920, 1921, 1922, 1923, and 1924, respectively? In answering this question, state such amount of rents and revenues for each year, respectively. Answer: 1914, $1,500; 1915, $2,500; 1916, $3,000; 1917, ——; 1918, ——; 1919, $2,500; 1920, $4,000; 1921, $3,000; 1922, $3,000; 1923, $4,000; and 1924, $3,000."

The evidence was clearly sufficient to support a finding that appellee executed the deed through fear of criminal prosecution for theft amounting to felony. That she took the $1,410 was admitted, and it may be conceded

for our present purposes that she was guilty of a felony in taking it, although appellee contests this proposition.

[1] The theory of appellants regarding the execution of the deed, upon which the evidence was sufficient to support an affirmative finding, was: Frank Stefka, before his death, had called his family about him and stated that he wanted appellee given her support until she became of age and at that time $500 out of his estate. When she became of age they offered her her choice of three propositions: (1) $700 set aside by Frank Stefka to her mother at the time she left home, with interest thereon up to the date appellee became of age; (2) 18¾ acres out of the 300-acre tract; or (3) $500 and the support Frank Stefka had set aside to her. She accepted the last proposition and made the deed accordingly, "because" as one appellant testified she told them, "Grandfather said he didn't want her to have more than $500 of his property, and that it would be a sin for her to take more than that. She said he told her that several times before he died." The testimony of appellants was that they did not know of appellee's taking their money until after the deed was executed, and that the note was given to cover the amount she had taken.

Appellants objected to the court's charge because it did not submit "the defense of defendants and the defendants' theory of the manner of signing of said deed and the consideration that moved Sadie Julia Pankoney at said time to sign said deed." They also requested the following special charge, which was refused:

"Did the plaintiff, Sadie Julia Lawrence (then Sadie Julia Pankoney) sign the deed to Joe T. Stefka, E. A. Stefka, Fanny A. Stefka, Mary Stefka, and W. L. Stefka, at the office of Albert S. Evans, in Georgetown, Tex., dated February 19, 1923, and accept the $500 consideration in said deed because the same had been theretofore set aside to her by her grandfather, Frank Stefka?"

The first two propositions in appellants' brief complain of the action of the trial court in overruling this objection to the charge and in refusing this special issue. By far the greater portion of the brief proper is taken up with a presentation of these propositions.

[2] It is well settled by many cases that each party has the right to have submitted to the jury, whether under a general charge or special issues, each independent group of facts supported by pleadings and evidence, which if found would authorize or defeat recovery.

We have reached the conclusion that the refused special issue, assuming that it otherwise meets the necessary requirements of this rule, was not supported by appellants' pleadings. The consideration which they plead for the deed was the $500 and other valuable consideration theretofore obtained from them by appellee. The payment of the $500 was submitted and found by the jury. Appellants made no request to have submitted the matter of appellee's support, which was the only consideration moving from them which the record suggests. The pleadings nowhere allude to Frank Stefka's request that appellee be given only $500 out of his estate, and that request could not possibly be referable to the allegation of a valuable consideration moving from appellants to appellee. It was not a valuable consideration at all. At most it was merely a moral or good consideration. In so far as it entered into the consideration of the deed it was pertinent only as forming the basis of or reason for a gift beyond the other consideration named in the deed.

Aside from whether there was in fact any consideration for the deed, the real point in controversy was whether appellee signed it voluntarily or was coerced by threats of prosecution. Her reasons for signing it voluntarily, aside from the consideration pleaded and proved, were merely evidentiary, the special charge at most called for a finding that appellee accepted the $500 voluntarily. As such, it was merely putting in different form the issues already submitted, whether appellee was coerced by threats of prosecution.

We hold that the trial court did not err in the respects in question.

[3] Appellants' contention that the evidence was insufficient to support the judgment and the jury's findings on the issue of duress is predicated upon the legal proposition that a threat of imprisonment as a means of collecting a valid debt is not duress. There is no question upon the sufficiency of the evidence to support the specific fact findings of the jury on this issue. Landa v. Obert, 45 Tex. 547, Obert v. Landa, 59 Tex. 475, and Landa v. Obert, 78 Tex. 33, 14 S. W. 297, are often cited as in accord with appellants' contention. A very clear discussion of this subject may be found in Houston Ice & Brewing Co. v. Harlan (Tex. Com. App.) 228 S. W. 1090. Conceding for our present purposes the claimed effect of the holding in Landa v. Obert, the case at bar comes clearly within two of the well-recognized exceptions to the rule contended for, as set forth in the Harlan Case, namely:

"(1) Where the purpose of the threat is to exact a consideration wholly disconnected from the offense for which prosecution is threatened;" and "(2) where the purpose and effect of the threat is to exact an unconscionable bargain."

Appellee owed appellants only $1,410 in a transaction wholly disconnected from her interest in the land. She deeded to appellants her interest therein, which the jury found to be worth $3,281.25, for which she received a credit of only $500 on the note she had given for $1,410. It is only necessary to state the transaction to demonstrate that it comes

within both these exceptions to the general rule which Landa v. Obert is claimed to support.

[4-6] The claim that Frank Stefka before his death gave all his property to his adult children is supported by the testimony of appellants alone. The substance of that testimony was that in 1910 Frank Stefa was in bad health and could not attend to his farm and he and his wife then made an agreement with their six children, Frances, Joe, Emil, Charley, Mary, and Fanny, by which these children were to have all the community personalty, and receive the fruits and revenues of the farm, and were to look after the farm and support their father and mother for the rest of their lives. Under this arrangement the money on hand and that derived from the farm was invested by Frank Stefka in his own name, but for the benefit of the adult children. Joe Stefka was to receive $3,000 for his share of the estate, but was not paid until after his father died. Appellants were interested witnesses as well as being hostile to appellee. It is not necessary to cite authority upon the proposition that the court and jury were not bound to accept their testimony as true, even though there was no witness who contradicted them. When appellee showed that Frank Stefka owned personal property which came into the possession of his children at the time of his death, the burden was laid upon appellants to show that he parted with title thereto before his death. The evidence was sufficient to meet this burden as an issue of fact to go to the jury, but it was not of that conclusive character that would warrant the deduction that it would support but one reasonable conclusion.

[7] Upon the issue of the amount and value of personal property, the evidence showed that Frank Stefka had a note against Womack & Sturgis that was renewed on January 1, 1914, just a little while after his death, for $14,448, that he had another note against Robert J. Eckhardt which was renewed January 2, 1914, for $4,700, and that early in 1914 Joe Stefka was paid $3,000 out of money belonging to the estate. There was other personal property, but evidence of its value was somewhat vague. The three items above amounted to over $22,000. The jury found the value of Frank Stefka's community interest in the personalty at $10,849.44. It will therefore be seen that the verdict is supported by the three items mentioned alone.

We overrule all assignments of error and affirm the trial court's judgment.

Affirmed.

### On Rehearing.

We will note only two points raised in appellants' motion for rehearing, namely: First, that we held that the $500 paid to appellee was not a valuable consideration; and, second, that we held the contribution of appellants to appellee's support during minority was not a valuable consideration. We did not so hold; nor do we think our opinion is susceptible of this construction. What we did hold was merely that the request of Frank Stefka that appellee be paid ony $500 out of his estate was not a valuable consideration, but at most was a good or moral consideration. The $500 was, of course, a valuable consideration; but the request that only that amount be paid was nothing more than what we designated in our original opinion, a "moral or good consideration."

The motion has had our careful perusal, and is overruled.

Overruled.